**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**DERBY REFINING COMPANY, Defendant.**

Civ. A. No. 85–1176.

United States District Court, D. Kansas.

Feb. 20, 1985.

Michael A. Stabler, Kansas City, Mo., Benjamin L. Burgess, Wichita, Kan., for plaintiff.

Joseph W. Kennedy, Wichita, Kan., Mary K. Higginnotham, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

On March 30, 1984, plaintiff, Raymond J. Donovan, filed suit against defendant, Derby Refining Company, alleging that Derby had violated the overtime and recordkeeping provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, with regard to payment of a number of its service station managers. By way of affirmative defense, Derby contended that the service station managers were independent contractors and not employees of Derby.

The case is currently before the Court on the motion of the Secretary of Labor for partial summary judgment and an order holding that these contractors are employees of Derby within the meaning of the Act, 29 U.S.C. § 203(e). Derby filed no memorandum in opposition to plaintiff's motion. For the reasons that follow, the motion of the Secretary shall be granted.

The underlying facts are not disputed. Each individual that became one of Derby's contractors was required to sign an agreement entitled "Agreement Between Derby Refining Company and Contractor Concerning Provision of Personnel Services," a copy of which was attached to the Secretary's motion as Exhibit 2. Dk. no. 22. The Agreement provides that Derby retains ownership and control of the station and the land upon which it was located. (Article I(A)). Derby also retains ownership of all equipment at the station. (Article I(A)). Ownership of all products remains with Derby until sold to the public. (Article I(A)).

The Agreement prohibits the contractor from operating any other related or unrelated business at the station. (Article I(C)). The contractor pays no rental to Derby. (Article I(A)). Derby supplies all products to be sold at the station. (Article II(B)). Derby pays all real property and personal property taxes and all public utility charges. (Article II(C)). Derby pays all occupational and business licenses. (Article II(C)). The authority to develop advertising and promotional materials is retained by Derby. (Article II(D)). The contractor is required to deposit funds on a daily basis in a Derby bank account, using a form supplied by Derby. (Article II(B), (C)). Derby retained the right to alter the manner in which the contractor collected and remitted such funds. Dk. no. 22, Exhibit no. 1, p. 26. Derby determines the hours of operation for the station. (Article III(D)). The contractor could not vary those hours without Derby's approval. Exhibit no. 1, pp. 40–42. Derby requires the contractor to receive and store gasoline and other products in a manner established by it, and Derby requires the contractor to provide station personnel with uniforms bearing Derby's trademark. (Article III(G), (K)).

Derby determines the required number of man hours to be worked at the station each month, (Article IV(C)), and increases

or decreases the contractor's compensation accordingly. (Article IV(D)). Derby retains all opportunity for profit and risk of loss from the operation of the station, other than loss due to the contractor's negligence. (Article V(C)). Derby retains the right to audit each contractor's records every two to six weeks. (Article VII). Defendant retains the right to terminate the contract if, in the sole discretion of Derby, it was determined that the contractor was in default and such default remained uncured for seven days. (Article VI). Finally, Derby requires each contractor to give Derby a security deposit. (Article VIII).

The Secretary's contention is that the above factors all point to the conclusion that the alleged independent contractors were in fact employees of Derby within the meaning of 29 U.S.C. § 203(e). In determining whether a worker is an independent contractor or an "employee" under the Fair Labor Standards Act, the general rule is that the courts must look at the economic realities of the activities being performed. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). A number of considerations must be examined as guides in the determination of whether an employment relationship exists: the degree of control, opportunity for profit or loss, investment in the facility, permanency of the relationship, and the amount of skill required. *See, e.g., Donovan v. Tehco*, 642 F.2d 141 (5th Cir.1981). An analysis of the above factors establishes that the station managers in this case may be considered employees, and not independent contractors, of Derby.

First, regarding the element of control, it is apparent from the facts that Derby, and not the managers, controlled the operation of the various stations. Derby retained ownership of the building, the land, and the products sold at the station. Derby set hours, conducted advertising, determined prices, and required the station managers to report and deposit funds into a Derby account daily. Under very similar facts, the court in *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308 (5th Cir.

1976), held that control was vested in the company. The right of control was vested in Derby.

Second, since Derby's contractors had neither an investment nor an ownership interest in the products sold at the station, they had no opportunity for profit or loss. In addition, their monthly compensation was fixed under the Agreement. (Article IV(A)). Furthermore, Derby bore all risks of loss not occasioned by the contractor's negligence.

The third factor identified by the court in *Tehco* was whether the alleged independent contractor made an investment in the company. 642 F.2d at 143. In the present case, the station managers made no investment in the building or in the equipment or in the merchandise sold. All risk capital was provided by Derby and Derby paid all the bills.

Fourth, the station managers' skill is at issue. Although little evidence is adduced on this issue, the Agreement does provide that the contractor's only requirement was to afford customers normal self-service operations according to Derby's policies. (Article I(B)). The apparent amount of skill required does not lend support to the argument that the station managers were independent contractors.

Finally, *Tehco* requires an examination of the permanency of the relationship between the worker and the company. *Id.* By the terms of the Agreement, the contractor was not allowed to have any other business at the station. In addition, Derby retained the right of termination under the Agreement. Furthermore, the Agreement appears to afford the contractors no job security. The Court finds little permanency in the relationship between the station managers and Derby.

A cumulative reading of the above factors establishes that the station managers/contractors were employees of Derby and not independent contractors. Therefore, the motion of the Secretary for partial summary judgment and an order holding that the contractors are employees of Der-

by rather than independent contractors within the meaning of 29 U.S.C. § 203(e) shall be granted. This opinion, however, does not purport to address Derby's fourth or fifth defenses regarding categorization of the employees.

IT IS THEREFORE ORDERED that plaintiff's motion for partial summary judgment shall be granted.